**In re Scott Joseph NOVAK, Debtor.**

**Bankruptcy No. 95–04413–6B7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

April 9, 1997.

Opinion Denying Motion to
Amend Nov. 7, 1997.

S. Craig Wakefield, Kissimmee, FL, for debtor.

John C. Lovett, Tallahassee, FL, for Barnett Bank.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Debtor's, Scott Joseph Novak, Motion for Damages and Attorney's Fees for Violation of the Automatic Stay by Barnett Bank Pursuant to 11 U.S.C. § 362(h) (Doc. 37). Appearing before the Court were Craig Wakefield, counsel for the Debtor, Scott Joseph Novak; and John Lovett, counsel for Barnett Bank. After reviewing the pleadings, evidence, exhibits, live testimony of Scott Joseph Novak, Wanda Lee Queen, Claudia Ann Liotta, and Diane Hudson, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtor, Scott Joseph Novak ("Mr.Novak"), filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 8, 1995. 11 U.S.C. § 101 *et seq.* Mr. Novak listed Barnett Bank, N.A. of Central Florida ("Barnett") as a general unsecured creditor in the amount of $3,396.00. Mr. Novak's debt to Barnett was based upon a checking account with insufficient funds in an alleged "kiting scheme". Barnett received notice of Mr. Novak's bankruptcy when the Notice of Commencement of Case Under Chapter 7 ("Notice") was sent to them by U.S. mail on August 31, 1995. The deadline for creditors to file a Complaint Objecting to Discharge pursuant to § 727 of the Bankruptcy Code or to Determine Dischargeability of Certain Debts pursuant to § 523 of the Bankruptcy Code was November 20, 1995.[1] The Notice defines a discharge and explains its effect.[2]

Barnett's policy was debts incurred similar to Mr. Novak's were not dischargeable in bankruptcy, and therefore, did not reflect the notice of a bankruptcy on his account. Barnett did not file a complaint under either § 523 or § 727 of the Bankruptcy Code. A discharge was entered on December 8, 1995. The debt owed by Mr. Novak to Barnett was discharged.

Mr. Novak went to Barnett on May 15, 1996 to cash a check for $500.00 made payable to him on a Barnett account. It was after 5:00 p.m. and near closing time. The Barnett drive-through teller, Claudia A. Liotta, delayed cashing the check to verify the maker's signature. The teller determined that Mr. Novak was indebted to Barnett. The teller brought this to the attention of Wanda Queen ("Ms.Queen"), vice president and branch officer.

Ms. Queen advised Mr. Novak that he was indebted to Barnett based upon unpaid checks and intended to set-off the $500.00 against his indebtedness. Mr. Novak notified her of his bankruptcy. Ms. Queen advised Mr. Novak to leave and call Barnett the next day, regarding the $500.00 check.

Mr. Novak then became irate and rude because of the actions of the Bank. Ms.

---

1. The Notice of Commencement of a Case under Chapter 7 states the following with respect to discharge of debts:

   November 20, 1995 is the Deadline to File a Complaint Objecting to Discharge of the Debtor or to Determine Dischargeability of Certain Types of Debts.

   The Notice also advises creditors not to take certain actions such as the following:

   [c]ontacting the debtor to demand repayment, taking action against the debtor to collect money owed to creditors or to take property of the debtor . . . if unauthorized actions are taken by a creditor against a debtor, the court may penalize that creditor

2. The Notice states the following with respect to the effect of a discharge:

   A discharge means that certain debts are made unenforceable against the debtor personally. Creditors whose claims against the debtor are discharged may never take action against the debtor to collect the discharged debts.

Queen called the police because it was close to Barnett's closing time and she was concerned about the safety of departing employees. The police arrived and Mr. Novak left.

Ms. Queen consulted with appropriate Barnett officers. Barnett records on Mr. Novak's account did not reflect the notice of bankruptcy. The Barnett officers determined that the debt Mr. Novak owed was non-dischargeable, irregardless of the discharge in bankruptcy and offset the funds to Mr. Novak debt to Barnett. Mr. Novak was informed of Barnett's actions when he called Ms. Queen on May 16th.

Mr. Novak filed his Motion for Damages and Attorney's Fees for Violation of the Automatic Stay by Barnett Bank Pursuant to 11 U.S.C. § 362(h) (Doc. 37) on October 30, 1996. A hearing was held on December 5, 1996 and Barnett failed to appear. The Court granted Mr. Novak's motion, awarding Mr. Novak a Judgment for the $500.00 at issue, plus $700.00 for expenses, $500.00 for attorney's fees, and $12,500.00 for punitive damages.

Barnett filed its Motion for Reconsideration to Vacate or Amend Order and for Relief from Sanctions (Doc. 40) on December 16, 1996. The Court granted the motion and set a Final Evidentiary hearing February 26, 1997 on the Debtor's Motion for Sanctions.

Mr. Novak is a conscientious debtor who sought counsel, informed his creditors of his bankruptcy, and relied on the protection provided by the Code. Barnett is a sophisticated creditor, familiar with the ramifications of a bankruptcy filing. Barnett failed to obtain clarification or permission from the court with respect to the automatic stay. Barnett admitted that it had actual knowledge of Mr. Novak's bankruptcy and its effect on the debt to the bank on two separate occasions and disregarded the notice. The Notice of Case under Chapter 7 of the Bankruptcy Code was sent to Barnett and Mr. Novak informed Ms. Queen.

Barnett concedes its actions constituted a violation of 11 U.S.C. 362 and that an award of reasonable damages is appropriate, but objects to an award of punitive damages. With respect to actual damages, Mr. Novak

missed work and traveled a considerable distance to attend the hearings on December 5, 1996 and February 26, 1997, incurring costs and a reasonable attorney's fee. Mr. Novak is entitled to actual damages as a direct result of Barnett's actions, consisting of $500.00 from conversion of the check, $1,008.00 for lost wages, $191.31 for rental car, $585.81 for airplane fare, and $2,000.00 for a reasonable attorney's fee. An award of $20,000.00 in punitive damages is appropriate based on the circumstances and facts.

## CONCLUSIONS OF LAW

Barnett concedes that its actions violated the automatic stay and reasonable damages are appropriate. The issue remaining before the Court is whether Barnett Bank's actions constitutes willful violation of the automatic stay pursuant to 11 U.S.C. § 362(a), subjecting SunTrust to punitive sanctions under 11 U.S.C. § 362(h).

Section 362 of the Bankruptcy Code provides for an automatic stay upon the filing of a bankruptcy petition under any chapter of the Bankruptcy Code.

Section 362 of the bankruptcy Code provides in pertinent part:

(a) Except as provided in subsection (b) of this action, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

. . . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before commencement of the case under this title[.]

11 U.S.C. § 362(a).

■ The stay provides the debtor with relief from the pressure and harassment of creditors seeking to collect their claims. *Maritime Electric Co., Inc. v. United Jersey*

*Bank*, 959 F.2d 1194, 1204 (3rd Cir.1991); *Matter of Garfalo's Finer Foods, Inc.*, 186 B.R. 414, 435 (N.D.Ill.1995). The stay also protects creditors by preventing certain creditors from attempting to gain an unfair advantage regarding payment of claims. It protects property that may be necessary for the debtor's fresh start. This promotes the bankruptcy goal of equality of distribution.

■ The reach of the stay is broad, but not unlimited. It provides grounds for seeking relief from the stay and, in conjunction with Rule 4001, provides a procedure for seeking such relief. The stay applies to all entities; an entity is broader than a "person" and includes an "estate, trust, governmental unit, and the United States trustee."

■ A violation of the stay is punishable as contempt of court. *Jove Engineering v. Internal Revenue Service (In re Jove Engineering )*, 92 F.3d 1539, 1546 (11th Cir.1996); *Carver v. Carver*, 954 F.2d 1573, 1578 (11th Cir.) *cert. denied*, 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992). Section 362 also provides an explicit damage remedy for an individual injured by violation of the stay.

■ Section 362(h) provides for a recovery of damages, costs, and attorneys' fees by an individual damaged by a willful violation of the stay. An individual injured by a stay violation may also recover punitive damages. *In re Jove Engineering*, 92 F.3d at 1552; *In re Solis*, 137 B.R. 121, 124 (Bankr.S.D.N.Y. 1992); *Promower, Inc. v. Scuderi (In re Promower, Inc.)*, 74 B.R. 49 (Bankr.D.Md.1987). Section 362(h) provides in pertinent part:

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h). "Willfulness generally connotes intentional action taken with at least callous indifference for the consequences." *In re Jove Engineering*, 92 F.3d at 1555 *quoting Sizzler Family Steak House, Inc. v. Western Sizzlin Steak House*, 793 F.2d 1529, 1535 (11th Cir.1986). The willfulness requirement refers to the deliberateness of the creditor's conduct and their knowledge

of the bankruptcy filing. *Davis v. United States (In re Davis )*, 201 B.R. 835, 837 (Bankr.S.D.Ala.1996); *Wagner v. Ivory (In re Wagner )*, 74 B.R. 898, 903 (Bankr.E.D.Pa. 1987).

■ Barnett Bank willfully violated the automatic stay imposed by 11 U.S.C. § 362(a). Barnett is a major financial institution, knowledgeable of effect of a petition in bankruptcy. Barnett knew the automatic stay was invoked because they twice received actual notice of Mr. Novak's petition in bankruptcy. Barnett forged ahead and took action against Mr. Novak without obtaining clarification or permission from the court. Barnett kept the proceeds from the check in violation of the stay. Actual damages are warranted. *In re Lile*, 103 B.R. 830, 837 (Bankr.S.D.Tex.1989); *In re Peterkin*, 102 B.R. 50, 53–54 (Bankr.E.D.N.C.1989); *In re Clark*, 49 B.R. 704, 707 (Bankr.D.Guam 1985).

■ Section 524 of the Bankruptcy Code provides the debtor with a post-discharge injunction against collection of debts discharged in bankruptcy, embodying the fresh-start concept of the Code. *Hardy v. United States, Internal Revenue Service (In re Hardy )*, 97 F.3d 1384, 1388–89 (11th Cir.1996). A violation of the injunction may warrant sanctions. The test to determine willfulness in violating the automatic stay provisions of § 362 is likewise applicable to determine willfulness for violations of the discharge injunction of § 524.

■ Barnett's actions constituted a violation of the 11 U.S.C. § 524 discharge injunction, causing the imposition of sanctions. Mr. Novak's discharge was entered on December 8, 1995. The debt owed by Mr. Novak to Barnett was discharged. Barnett conceded that it had violated the automatic stay; it therefore, knowingly violated the discharge injunction by withholding and keeping the proceeds from Mr. Novak's check. *Griffin v. Sears, Roebuck and Co. (In re Griffin )*, 204 B.R. 308 (Bankr.D.R.I.1997). Barnett never motioned for relief from the automatic stay nor did it file a complaint under either § 523 or § 727 of the Bankruptcy Code. Barnett, with full knowledge of the

bankruptcy, acted after the entry of discharge. Barnett went clearly beyond what is permissible. An award of sanctions is appropriate.

▪ Punitive damages may only be awarded where the creditor acts with actual knowledge or with reckless disregard that it was violating the automatic stay. *Id.*; *In re Wagner,* 74 B.R. at 903. Some cases permit an award of punitive damages under § 362(h) after an additional finding of maliciousness or bad faith by the creditor. *In re Chateaugay Corp.,* 920 F.2d 183, 186 n. 1 (2nd Cir.1990)(quoting *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1105 (2nd Cir. 1990)).

Another line of cases has concluded that punitive damages are appropriate where an arrogant defiance of federal law is demonstrated. *Matter of Mullarkey,* 81 B.R. 280, 284 (Bankr.D.N.J.1987)(quoting *In re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 255 (Bankr.D.Conn.1985)).

▪ An award of punitive damages are warranted under any of these standards in this case. This incident was not an example of oversight or excusable neglect by Barnett or an uninformed employee without the import of the Debtor's bankruptcy. The Debtor's account reflected a debt to Barnett, but did not reflect the Debtor's bankruptcy. The injury to the Debtor was predicated upon calculated corporate policy. It was Barnett's corporate policy to treat debts similar to the Debtor's non-dischargeable even with full knowledge and comprehension of the implication and ramifications of a discharge in bankruptcy. This intentional corporate policy is in direct violation of the letter and the spirit of the Bankruptcy Code.

Barnett is a knowledgeable financial institution and should be attuned to the responsibilities owed to debtors who have sought the protective shield of 11 U.S.C. § 362. Barnett had actual knowledge that it was violating the automatic stay. Barnett's action constitutes bad faith in direct contravention of the fundamental protection afforded to debtors in 11 U.S.C. § 362.

▪ An award of punitive damages should be gauged by the gravity of the offense and set at a level sufficient to insure that it will punish and deter. *Flynn v. Internal Revenue Service (In Matter of Flynn),* 169 B.R. 1007, 1023–24 (Bankr.S.D.Ga.1994); *In re Aponte,* 82 B.R. 738 (Bankr.E.D.Pa. 1988); *Mercer v. DEF, Inc.,* 48 B.R. 562, 566 (Bankr.D.Minn.1985). Barnett's indifference and recalcitrance persuade the Court that an award of $20,000.00 in punitive damages is appropriate.

Accordingly, Mr. Novak's Motion for Damages and Attorney's Fees for Violation of the Automatic Stay by Barnett Bank Pursuant to 11 U.S.C. § 362(h) is due to be granted.

### *JUDGEMENT*

The Debtor's, Scott Joseph Novak, Motion for Damages and Attorney's Fees for Violation of the Automatic Stay by Barnett Bank Pursuant to 11 U.S.C. § 362(h) (Doc. 37) and Barnett Bank, N.A. of Central Florida's Motion for Reconsideration to Vacate or Amend Order and for Relief from Sanctions (Doc. 40), having been tried before the Court and in conformity with and pursuant to the **Memorandum Opinion** entered contemporaneously herewith, it is

**ORDERED, ADJUDGED, and DECREED** that the relief sought in the Debtor's, Scott Joseph Novak, Motion for Damages and Attorney's Fees for Violation of the Automatic Stay by Barnett Bank Pursuant to 11 U.S.C. § 362(h) (Doc. 37) is **GRANTED** with respect to actual and punitive damages; it is further

**ORDERED, ADJUDGED, and DECREED** that Judgement is entered in favor of Scott Joseph Novak against Barnett Bank, N.A. of Central Florida, in the amount of $2,285.12, actual damages, constituting $500.00 from the withheld check, $1,008.00 for lost wages, $191.31 for rental car expenses, $585.81 for plane fare; it is further

**ORDERED, ADJUDGED, and DECREED** that Barnett Bank, N.A. of Central Florida shall pay a sum of $2,000.00 for a reasonable attorney's fee to Mr. Novak's counsel Craig Wakefield, Esquire; it is further

**ORDERED, ADJUDGED, and DECREED** that a Judgment is entered against Barnett Bank, N.A. of Central Florida and in favor of the Debtor, Scott Joseph Novak, for $20,000.00 in punitive damages; and it is

**ORDERED, ADJUDGED, and DECREED** that Barnett Bank, N.A. of Central Florida shall certify compliance with the Court's Judgement within 10(ten) days from entry of this Judgment.

## MEMORANDUM OPINION ON MOTIONS

This matter came before the Court on Barnett Bank's Motion for Clarification and/or to Supplement the Record, or, alternatively, to Amend Findings (Doc. 62) of the Court's Memorandum Opinion and Judgment dated April 9, 1997. Appearing before the Court was Brian McDowell, attorney for Barnett Bank, N.A. of Central Florida. After reviewing the pleadings, evidence, exhibits, and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtor, Scott Joseph Novak, ("Debtor") filed for relief under Chapter 7 of the Bankruptcy Code on August 8, 1995. The Debtor listed Barnett Bank, N.A. of Central Florida ("Barnett") as an unsecured creditor in the amount of $3,396.00. Barnett received notice of the Debtor's bankruptcy when a Notice of Commencement of Case under Chapter 7 was sent via U.S. mail on August 31, 1995. Barnett did not file a complaint under either § 523 or § 727 of the Bankruptcy Code. A discharge was entered on December 8, 1995, and the debt owed to Barnett was discharged.

On May 15, 1996, the Debtor went to Barnett to cash a check for $500.00. The Debtor was told by Wanda Queen ("Queen"), a vice president and branch officer of Barnett's St. Cloud office, that he was indebted to Barnett based upon unpaid checks. The Debtor notified them of his bankruptcy. Nonetheless, Queen informed the Debtor that she intended to set-off the $500.000 against his indebtedness.

The Debtor filed his Motion for Damages and Attorney's Fees for Violation of the Automatic Stay by Barnett pursuant to 11 U.S.C. § 362(h) (Doc. 37) on October 30, 1996. A default judgment was entered against Barnett for the $500.00 it had offset against the Debtor in violation of § 362(h), $700.00 for expenses, $500.00 for attorney's fees, and $12,500.00 for punitive damages.

Barnett filed its Motion for Reconsideration to Vacate or Amend Order and Relief from Sanctions (Doc. 40) on December 16, 1996. The basis for Barnett's Reconsideration Motion rested on the affidavit of Queen that there were no Barnett records showing bankruptcy when she set-off the Debtor's check. Barnett argued the actions of its employees were taken in good faith and it was not a willful and knowing violation of the stay. The Court granted the Reconsideration Motion and set a Final Evidentiary Hearing ("Final Hearing") February 26, 1997.

Barnett's attorney at the Final Hearing, John Lovett ("Lovett") presented the testimony of Wanda Queen, Claudia Liotta, and Diane Hudson. As she testified in her affidavit, Queen denied receiving any notification of the Debtor's bankruptcy on Barnett's account screen. The account screen contains basic customer information, including whether a bankruptcy has been filed by a bank customer.

Lovett elicited the following testimony from Queen:

Q When you said a minute ago that you checked the bank records to see if there was a bankruptcy, what did you mean by that? Did you check files or what did you do?

A I pulled up a computer screen that looks at what's on the account and it showed that he still had an outstanding kiting or fraud debt and there was nothing there. (Final Hearing Tr. at 25–26).

On further questioning by the Court, Queen stated as follow:

Q So the bank received notification and it made a decision not to list [the bankruptcy], and therefore, when you pulled up the

screen you didn't have the knowledge that a bankruptcy had been filed . . .?

A Right, the information that I received did not show it [the bankruptcy] to me. (Final Hearing Tr. at 39).

Diane Hudson ("Hudson"), a senior vice president of Barnett, corroborated Queen's testimony. She testified that a bankruptcy was not listed on the Debtor's account screen because "[t]he bankruptcy petition was received and forwarded to our legal research department where the system was researched for debts owed to the bank by [the Debtor]. There were none found and, therefore, no further action was taken on the bankruptcy petition." (Final Hearing Tr. at 49).

Hudson further stated that it was Barnett's position that debts incurred by fraud were not protected by the automatic stay in bankruptcy. On cross-examination by Debtor's attorney, she stated, "[i]t's the bank's position that the debt was not a true debt. It was a fraud, therefore, there was no action necessary." (Final Hearing Tr. at 51). As Hudson explained, "[i]f we determined that it's a fraud, then it's our understanding that it is not considered part of the bankruptcy." (Final Hearing Tr. at 52).

Lovett conceded in his summation that Barnett had violated the automatic stay of bankruptcy and that an award of reasonable damages were appropriate, but denied Barnett had acted egregiously or willfully in disregard of the automatic stay and objected to an award of punitive damages. Lovett argued that Barnett's violation of the automatic stay was innocent good faith action taken by its employees.

A Memorandum Opinion and Final Judgment (Doc. 58) was entered on April 9, 1997, finding Barnett had willfully violated the automatic stay [1] and the discharge [2] by converting the Debtor's check subsequent to the discharge. Actual and punitive damages of $24,285.12 were assessed consisting of: $500.00, conversion of the check; $1,785.12, lost wages and travel expenses, $2,000.00, attorney's fees; and $20,000.00, punitive damages.

Barnett filed its Motion to Amend the Court's Findings (Doc. 62) on June 3, 1997. Barnett satisfied the Judgment and does not move to set aside the Court's Opinion or Judgment. Barnett acknowledged in its Motion that the Court's findings were appropriate and warranted based upon the record before the Court. Barnett does not contest the testimony of its witnesses and the arguments of its counsel support the conclusion that Barnett's employees acted improperly.

Barnett seeks in its motion to make two amendments to the findings of fact: (1) Barnett's computer screen did reflect the Debtor's bankruptcy status at the time of the incident; and (2) Barnett has a corporate policy in effect at the time of the incident that "clearly reflects that the rules and regulations of Barnett Bank provide that no offsets may take place without the approval of legal counsel."

A hearing on Barnett's Motion to Amend ("Hearings to Amend") on September 3, 1997. Barnett presented the testimony of Hudson, Lovett, and Bruce May, and introduced a copy of Barnett's computer screen with the Debtor's account information and bankruptcy status that existed on the date of Barnett's violation of the stay. Barnett argued that its "employees failed to look beyond the initial screens or failed to recognize the coding on the initial screen. . . . Had the Barnett employees reviewed the subsequent screens, they would have become aware of

---

1. 11 U.S.C. § 362 provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under . . . this title . . . operates as a stay, applicable to all entities of—
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. . . .

11 U.S.C. § 362(a)(6) and (7).

2. 11 U.S.C. § 524 provides as follows:

(a) a discharge in a case under this title—
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived. . . .

11 U.S.C. § 524(a)(2).

the existence of a bankruptcy case." (Barnett's Mot. to Amend at 2).

Lovett testified that he had received a copy of the computer screen prior to the Final Hearing that showed the Debtor's bankruptcy status. As he stated, "I understood it to be a notation that a bankruptcy— a notice of a bankruptcy petition had been received by the bank." (Hearings to Amend Tr. at 20).

Lovett, however, did not offer the computer screen at the Final Hearing. His explanation was that it contradicted Queen's affidavit used in support of the Reconsideration Motion. Further, Lovett "had doubts as to whether that was an accurate printout of what that computer screen would have shown on May 15 . . . ." (Hearings to Amend Tr. at 20).

Barnett also introduced a copy of its bankruptcy policy in effect at the time of the Debtor's violation. Barnett's policy is that once a bankruptcy is filed, its employees should take no action outside of a bankruptcy court to collect or recover a debt. No exceptions were made for fraud. Barnett had provided this policy statement to Lovett prior to the Final Hearing. Lovett did not offer this document because "if I [Lovett] introduced this corporate policy, what I would be showing was that the bank had violated its own written policy." (Hearings to Amend Tr. at 22).

### CONCLUSIONS OF LAW

Barnett's Motion to Amend or Supplement the Court's findings of fact are made pursuant to Fed.R.Civ.P. 52(b) made applicable in bankruptcy proceedings by Fed.R.Bankr.P. 7052. Barnett does not move to set aside the Court's Opinion or Judgment. Barnett concedes that the Court's findings were "appropriate and warranted based upon the record before this Court." (Barnett's Mot. to Amend at 1).

■ As a general rule a motion to amend the Court's findings of fact should be based

on a "manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." *Ramos v. Boehringer Manheim Corp.*, 896 F.Supp. 1213, 1214 (S.D.Fla.1994). Barnett has failed to establish a manifest error of law or fact. There was a reasonable inference made from the evidence in the record and it was relied upon in making the Court's findings of fact.

Queen testified in her affidavit and at the Final Hearing that there were no Barnett records showing the Debtor's bankruptcy. Hudson, an officer at Barnett, testified that Barnett decided not to process the Debtor's bankruptcy status because Barnett's position was that the Debtor's fraud was not protected by bankruptcy.[3] Lovett argued in summation that Barnett knew it needed to correct its corporate procedures to prevent Barnett from circumventing the protection of the automatic stay in the future even though he had a copy of Barnett's promulgated bankruptcy policy. Based on the testimony of its witnesses and counsel's argument, a reasonable inference was made of Barnett's indifference and recalcitrance under proper bankruptcy procedures.

■ The Court may also in limited circumstances amend or supplement its findings on grounds of the availability of newly discovered evidence. *Id.* The general rule is a motion to amend should not be "employed to introduce evidence that was available at trial but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits," see *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir.1986); *Aybar v. Crispin–Reyes*, 118 F.3d 10, 16 (1st Cir.1997) (reconsideration denied where evidence is neither new nor unavailable at trial).

■ Except for motions to amend based on newly discovered evidence, the trial court is only required to amend its findings of fact based on evidence contained in the record. To do otherwise would defeat the compelling interest in the finality of litigation. *Fonte-*

---

**3.** Three Barnett officers believed that the Debtor's fraud was not protected by bankruptcy even though there was a promulgated bankruptcy policy. If three corporate officers had no knowl-

edge of this policy or failed to abide by its clear terms, it is questionable that there is in fact a functional policy at Barnett.

*not,* 791 F.2d at 1219. This view is followed by the Eleventh Circuit, see *Ramos v. Boehringer Manheim Corp.,* 896 F.Supp. at 1214; *United States v. Amtreco, Inc.,* 858 F.Supp. 1189, 1190 (M.D.Ga.1994); *In re Chase & Sanborn Corp.; Nordberg v. Arab Banking Corp.,* 138 B.R. 116, 119 (Bankr.S.D.Fla. 1992).

■ Because Barnett has not presented any newly discovered evidence, but attempts to introduce evidence available at the Final Hearing, their Motion to Amend the Court's findings is denied.

Lovett possessed evidence prior to the Final Hearing establishing Barnett knew of the Debtor's bankruptcy and its employees deliberately took action in violation of the automatic stay and the discharge. Lovett, however, relied on a trial strategy encompassing good faith actions by Barnett's employees and allowed his witnesses to testify in direct contravention to the documentary evidence. He made a calculated trial judgment not to introduce Barnett's complete computer screen and its corporate policy statement. Even though he has the duty to advance his client's case, it is equally incumbent upon a lawyer to take reasonable remedial measures after presenting inaccurate testimony to the Court. In this case, Lovett failed to take any reasonable remedial measures prior to the Hearing to Amend, even though he had ample opportunity after the Final Hearing to investigate his witnesses' testimony in light of the evidence he possessed.

Blessed with the acuity of hindsight, Barnett may now realize their mistake in not introducing all the evidence. Barnett's failure to fully present all the evidence in Lovett's possession prior to the Final Hearing should not grant them the opportunity to amend the Court's findings and beneficially gain from a correction in the record.

There has been no showing of a manifest error of law or fact that would warrant an amendment to the record. Barnett is not seeking to introduce any newly discovered evidence. Accordingly, Barnett's Motion to Amend or Supplement the findings is denied.