**In re Christine RIDDICK, Maurice F. Riddick, Debtors.**

**Bankruptcy No. 96–52579.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Feb. 8, 1999.

Supplemental Order March 4, 1999.

Robert Whittington, Akron, OH, for Debtor.

Jerome Holub, Akron, OH, Chapter 13 Trustee.

## ORDER AWARDING DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter came before the Court on a motion filed by debtor, Christine Riddick, on November 30, 1998 (the "Motion"), requesting that the Court find the United States of America, Department of Education ("US-DOE") and Aman Collection Service ("Aman") in contempt for alleged violations of the automatic stay. On December 7, 1998, the USDOE filed a response to the Motion and a hearing on the matter was set for January 14, 1999. To date, Aman has not objected or responded to the Motion.

During the January 14, 1999 hearing, the Court was informed that Ms. Riddick and the USDOE had reached a proposed resolution. The hearing then proceeded as to the alleged violations of the automatic stay by Aman only. Robert Whittington, counsel for Ms. Riddick, appeared at the hearing and the Court heard testimony from Ms. Riddick. Neither counsel for nor a representative of Aman was present.[1]

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b). Based upon testimony and evidence presented at the January 14, 1999 hearing, the argument of Ms. Riddick's counsel and the documents of record in this case, the Court makes the following findings of fact and conclusions of law.

## I. FACTS

On October 28, 1996, Ms. Riddick and her husband filed a joint chapter 13 bankruptcy petition. The USDOE was listed on debtors' schedules as a creditor holding an unsecured claim for Ms. Riddick's student loans and debtors' plan provided for a total of three payments to be made to the USDOE in months 58 – 60 of the plan.[2] The debtors'

---

1. The certificate of service attached to the Motion shows that a copy of the Motion was sent by regular U.S. mail on November 25, 1998 to Aman at P.O. Box 1149, Aberdeen, SD 57402–1149 (the address listed for that agency on letters sent by the USDOE to Ms. Riddick). On December 4, 1998, the Clerk's Office sent a notice of the January 14, 1999 hearing on the Motion to Aman at that same address. In neither case were the documents sent to Aman returned as undeliverable.

2. It is the debtors' contention (to which the US-DOE has not objected) that Ms. Riddick's student loans became due and payable more than 7 years before the bankruptcy filing, thereby making them dischargeable pursuant to 11 U.S.C. §§ 1328(a)(2) and 523(a)(8)(A). Consistent with such contention, the schedules and plan list the USDOE as a general, unsecured creditor to be paid (along with all other general, unsecured creditors) a total of 16% of its allowed claim.

chapter 13 plan was confirmed, without objection, on December 26, 1996.

Despite the operation of the automatic stay and the confirmation of the debtors' plan, the USDOE sent Ms. Riddick two letters, dated September 21, 1998 and November 6, 1998, regarding payments due on her student loans. Each of those letters clearly evince that they were sent for the purpose of collecting the amount owed by Ms. Riddick and each clearly set forth that the agency responsible for collecting on the debt was Aman. *See* Exhibits B and C, as attached to the Motion and as entered into evidence at the January 14, 1999 hearing.

During the January 14, 1999 hearing, Ms. Riddick testified that promptly after receiving the September 21st collection letter, she contacted Aman to inform the agency that she had filed a chapter 13 bankruptcy petition. Ms. Riddick stated that she spoke to an Aman representative named Kim Lee, that she informed Ms. Lee of her bankruptcy filing, and that she attempted to give Ms. Lee her bankruptcy attorney's name and telephone number. According to Ms. Riddick, Ms. Lee refused to accept the offered information and informed her that collection efforts would not be stopped until Ms. Riddick sent Aman a letter indicating that her bankruptcy attorney had proper authority to represent her. Ms. Lee also indicated that until the referenced letter was received, she would continue to call Ms. Riddick once a week regarding collection on her student loan.

Ms. Riddick testified that Ms. Lee did, in fact, telephone her weekly regarding collection of her student loan. When Ms. Riddick was not able to answer those calls, Ms. Lee would leave a message on the Riddicks' answering machine. During each of the telephone calls in which Ms. Riddick and Ms. Lee actually spoke, Ms. Riddick testified that she would remind Ms. Lee of her pending chapter 13 bankruptcy and would again attempt to give Ms. Lee her attorney's name and telephone number.

In an effort to stop the collection efforts by Aman, Ms. Riddick testified that she made three to four telephone calls and three to four visits to her attorney's office. None of those visits, however, resulted in Ms. Riddick missing any work. Ms. Riddick further testified that although she did not suffer any severe emotional distress from Ms. Lee's persistent telephone calls, she did feel bothered and harassed by Aman's collection efforts. In the Motion, Ms. Riddick requests that Aman be made to pay reasonable attorney fees and costs incurred in relation to the Motion and punitive damages of not less than $500.00 for each time Aman contact Ms. Riddick for collection on her student loan.

## II. DISCUSSION

■ The automatic stay becomes effective at the moment a debtor's bankruptcy petition is filed. 11 U.S.C. § 362(a). Once effective, the automatic stay applies to "all entities" and to "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). Unless otherwise ordered by the bankruptcy court, the protection afforded by the automatic stay continues during the entire pendency of a chapter 13 case and terminates only when a discharge is granted or denied.[3] 11 U.S.C. § 362(c).

■ The action taken by Aman to collect on Ms. Riddick's student loan debt *after* she had filed a chapter 13 bankruptcy petition is a clear violation of the automatic stay. Pursuant to § 362(h), a person shall recover actual damages, including costs and attorney fees, and, in some circumstances, punitive damages, when that person is injured by a "willful" violation. *See* 11 U.S.C. § 362(h). The term "willful," while not defined in the Bankruptcy Code, has been interpreted to simply mean acting intentionally and deliberately while knowing of a pending bankruptcy. *See, e.g., Cuffee v. Atlantic Business & Community Dev. Corp. (In re Atlantic Business & Community Dev. Corp.),* 901 F.2d 325, 329 (3rd Cir.1990); *Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773, 775 (8th Cir.1989); *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989); *C.I.T. Financial Services,*

---

**3.** The Court notes that at no time prior to or during these proceedings did the USDOE or Aman move for relief from the automatic stay pursuant to 11 U.S.C. § 362(d).

*Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989).

As noted above, the debtors listed the USDOE as a holder of a claim and provided for that claim in their plan. The record is silent as to when Aman first became involved with that claim. Because Ms. Riddick has resolved matters with the USDOE, the Court does not view the liability of Aman to derive from its actions as a USDOE agent, but rather examines its action independently of whatever agency relationship might or might not exist between the USDOE and Aman.

■ Aman is not listed in debtors' petition, schedules or plan. *See* Docket Nos. 1 and 2. Additionally, the Notice of Commencement of Case, dated October 29, 1996, and sent from the Clerk's Office to all creditors and other parties in interest, was not sent to Aman. *See* Docket No. 5. Thus, based upon the record evidence, the Court finds that Aman had actual knowledge of Ms. Riddick's pending bankruptcy by sometime in late September, 1998, when Ms. Riddick first contacted Ms. Lee. *See In re Bragg*, 56 B.R. 46, 49 (Bankr.M.D.Ala.1985) (knowledge of bankruptcy filing need not be from formal notice of commencement of case where party has sufficient facts to cause reasonably prudent person to make further inquiry) *See also In re Withrow*, 93 B.R. 436 (Bankr. W.D.N.C.1988) (knowledge of bankruptcy filing imputed to Citibank (South Dakota) NA by notice to its apparent agents); *In re Santa Rosa Truck Stop, Inc.*, 74 B.R. 641 (Bankr.N.D.Fla.1987) (I.R.S. charged with knowledge of bankruptcy filing through communication between debtor's attorney and I.R.S. agent). The record evidence before the Court further indicates that despite its knowledge of Ms. Riddick's pending bankruptcy, Aman continued with its collection efforts. These continued collection efforts were a "willful" violation of the automatic stay.

■ Where a willful violation forces a debtor to resort to court intervention to enforce her rights, an award of attorney fees is appropriate. *In re Davis*, 74 B.R. 406, 411 (Bankr.N.D.Ohio 1987); *In re Shriver*, 46 B.R. 626, 629–30 (Bankr.N.D.Ohio 1985). Although Ms. Riddick testified that she was forced to make three or four phone calls to her attorney as well as three or four visits to his office in an effort to stop Aman's collection activity, no detailed evidence was introduced as to the amount or cost of attorney time incurred. Therefore, although such an award is fitting in this case, further evidence is required before the amount of the award can be determined.

It may not be uncommon for collection agencies to contact debtors who, without the agencies' prior knowledge, have filed for bankruptcy. However, once these collection agencies learn of a bankruptcy filing, they must have procedures in place to ensure that all collection efforts against a debtor will stop. Otherwise, these agencies will be at risk of continually running afoul of the constraints imposed by 11 U.S.C. § 362(a), continually burdening the courts with unnecessary motions to enforce the automatic stay, and continually facing the chance of being sanctioned.

■ Given the ongoing nature of Ms. Lee's telephone calls to Ms. Riddick, it does not appear that Aman has any procedures in place to halt collection efforts upon learning of a bankruptcy filing. If Ms. Lee suspected that Ms. Riddick was trying to forestall the collection process by misstating that a bankruptcy had been filed, she could have contacted the attorney who Ms. Riddick said represented her or contacted the USDOE which had been notified of the Riddicks' bankruptcy filing since the inception of the case. Instead, Ms. Lee chose to ignore Ms. Riddick's continual verbal notice of her bankruptcy filing and to persist in collection efforts against her. Such deliberate ignorance cannot excuse a violation of the automatic stay. *In re Watson*, 78 B.R. 267, 271 (Bankr. C.D.Ca.1987). If Ms. Lee was acting in violation of established agency procedures to halt collection proceedings upon notice of a bankruptcy filing, Aman chose not to appear at the scheduled hearing nor to demonstrate in any manner that it should not be held liable for her actions. In any event, given the likelihood that an account debtor might file for bankruptcy and provide notice only to the original obligee, a collection agency such

as Aman should have procedures in place to deal with such violative contact. *See In Re Novak,* 223 B.R. 363 (Bankr.M.D.Fla.1997); *McCormack v. Fed. Home Loan Mortgage Corp. (In re McCormack),* 203 B.R. 521 (Bankr.D.N.H.1996); *In re Stucka,* 77 B.R. 777 (Bankr.C.D.Cal.1987).

██ Pursuant to Aman's failure to respond or otherwise defend against the Motion, the entry of default relief and the awarding of compensatory damages as prayed for in the Motion, i.e., the amount of reasonable attorney fees and costs incurred in relation to the Motion, are appropriate. *See* FED.R.BANKR.P. 7055. Additionally, as a penalty for Aman's apparent failure to develop procedures to halt collection proceedings upon notice of a bankruptcy filing and in an effort to deter other agencies from being similarly remiss, the awarding of punitive damages in a sum certain not to exceed $500.00 for each time Aman contacted Ms. Riddick for collection on her student loan is also not inappropriate. *Id.; Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986). However, the primary purpose of punitive damages is to cause change in the respondent's behavior and the prospect of such change is relevant to the amount in which punitive damages ought to be granted.

## III. CONCLUSION

Based upon the foregoing the Court finds that Aman willfully violated the automatic stay imposed by 11 U.S.C. § 362. Additionally, the Court finds that due to such willful violation, Ms. Riddick is entitled to recover from Aman her attorney fees and costs, as well as punitive damages. **THEREFORE, IT IS HEREBY ORDERED:**

1. That counsel for debtor shall have until *February 22, 1999,* in which to file with the Court and serve on Aman, a detailed accounting of the fees and costs incurred in relation to this Motion through that date. Thereafter, the Court will address the amount of attorney's fees and costs to be awarded in a separate order;

2. That Ms. Riddick is entitled to recover from Aman the sum of up to $3,000.00 in punitive damages ($500.00 per each of the six contacts after Ms. Riddick's first contact with Ms. Lee in late September, 1998) (the "Punitive Damages");

3. That Aman may purge itself of up to $2,500.00 of the Punitive Damages by filing with the Court and actually serving on Ms. Riddick's counsel, on or before *March 1, 1999,* a detailed explanation of whether Ms. Lee's conduct was consistent with established agency procedure. If Ms. Lee's conduct was not consistent with agency procedure, Aman's statement must provide a detailed explanation as to what will be done to ensure that its agents and employees abide by such procedures in the future. If Ms. Lee's conduct was consistent with agency procedure, Aman's statement must provide a detailed explanation as to what actions will be taken to prevent further violations of the automatic stay; and

4. That if the aforementioned statement is timely filed, the Court will hold a pre-hearing conference on Punitive Damages on *March 3, 1999,* at *1:30 p.m.,* in Room 250, U.S. Courthouse and Federal Building, Akron, Ohio, and counsel for Aman may participate in such pre-hearing by telephone. If the aforementioned statement is not timely filed, the Punitive Damages award shall become final and Aman shall be liable for the full amount of that award, including federal judgment interest and collection costs and fees, to Ms. Riddick as of *March 3, 1999.*

## SUPPLEMENTAL ORDER

On November 30, 1998, debtor, Christine Riddick, filed a motion to find Aman Collection Agency ("Aman") in contempt for alleged violations of the automatic stay. Aman did not objection or in any way respond to that motion and on January 14, 1999 the Court held a hearing on Ms. Riddick's motion. At the conclusion of the January 14th hearing, the matter was taken under advisement and on February 8, 1999 the Court entered an order finding Aman in contempt

for violation of the automatic stay and awarding attorneys fees and punitive damages. Pursuant to that February 8, 1999 order, the Court scheduled a March 3, 1999 pre-hearing conference on the issue of punitive damages and provided that, if, by March 1, 1999, Aman had filed a writing addressing its policies and procedures with respect to debtors who have sought bankruptcy protection, then counsel for Aman could participate in the March 3, 1999 pre-hearing conference by telephone.

The March 3, 1999 pre-hearing conference was held as scheduled and only Robert Whittington, counsel for Ms. Riddick, appeared. Neither counsel for nor a representative of Aman was present either in person or by telephone and, upon review of the file in this matter, the Court noted that Aman did not in any way respond to either the February 8, 1999 order or the Accounting. At the conclusion of the pre-hearing conference and pursuant to Bankruptcy Rule 7052, the Court set forth its findings of fact and conclusions of law in an oral decision with respect to the matter. In accordance with that oral decision and pursuant to the February 8, 1999 order, **IT IS HEREBY ORDERED:**

1. That debtor's counsel, Robert Whittington, is entitled to be compensated by Aman in the amount of $785.30 identified in the Accounting plus his time associated with the March 3 pre-hearing conference for a total of *$850.00* (the "Attorney Fee Award");

2. That the Attorney Fee Award is immediately due and payable and shall be remitted to Mr. Whittington by certified check sent to: Elk, Elk & Whittington, Key Building, Suite 1023, 159 South Main Street, Akron, Ohio 44308;

3. That if the Attorney Fee Award is not paid to Mr. Whittington on or before *March 15, 1999,* then, without further order of this Court and/or notice to Aman, the Attorney Fee Award shall, retroactive to the date of the entry of this Order, bear interest at the federal judgment interest rate and Aman shall also become liable to Mr. Whittington for all collection costs and fees associated with the Attorney Fee Award;

4. That debtor, Christine Riddick, is entitled to $3,000.00 in punitive damages against Aman (the "Punitive Damages Award");

5. That the Punitive Damages Award is immediately due and payable and shall be remitted to Christine Riddick by certified check sent to: Christine Riddick, c/o Robert Whittington, Elk, Elk & Whittington, Key Building, Suite 1023, 159 South Main Street, Akron, Ohio 44308; and

6. That the Punitive Damages Award shall, as of March 3, 1999, bear interest at the federal judgment interest rate, and Aman is hereby liable to Ms. Riddick to all collection costs and fees associated with the Punitive Damages Award.