**In re Joan I. SHADE, Debtor.**

**No. 00–71143.**

United States Bankruptcy Court, C.D. Illinois.

March 19, 2001.

John S. Narmont, Springfield, IL, for Debtor.

Mariann Pogge, Springfield, IL, trustee.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The District Court has remanded this proceeding to allow the Bankruptcy Court to "specifically state its reasons" for assessing $9,000 in punitive damages against Michael Patton and American General Finance. In addition, the District Court has directed the Debtor's attorney to properly corroborate his request for attorney's fees.

Following her meeting of creditors, the Debtor, Joan Shade, was accosted by Michael Patton of American General Finance in the hallway outside the courtroom. Mr. Patton harassed the Debtor, demanding payment of American General's debt. The confrontation reduced the Debtor to tears, and she fled to the courtroom where she found her attorney, John Narmont. Mr. Narmont accompanied the Debtor back to the hallway where Mr. Patton was still lying in wait. Mr. Narmont demanded that Mr. Patton leave his client alone. Mr. Narmont then escorted the Debtor out of the courthouse because she was too shaken up to leave on her own.

The Debtor filed a Motion for Sanctions pursuant to 11 U.S.C. § 362(h) and the Court set a hearing for June 6, 2000. American General did not respond to the motion or appear at the hearing. After listening to the evidence presented by the Debtor, the Court found that Mr. Patton and American General Finance violated the automatic stay and awarded the Debtor the following damages: $500 in attorney's fees; $1,000 in compensatory damages, and $9,000 in punitive damages. The Court subsequently denied a Motion for Reconsideration filed by Mr. Patton and American General.

On appeal, the District Court reversed the award of compensatory damages. The question of whether emotional distress is an actual injury for which a debtor is statutorily authorized to recover actual damages has resulted in a split of authority. This Court followed a line of cases which allow an award of compensatory damages for emotional distress caused by a violation of the automatic stay regardless of whether there is medical testimony. *In re Covington,* 256 B.R. 463, 467 (Bankr. D.S.C.2000); *In re Solfanelli,* 230 B.R. 54 (M.D.Pa.1999); *In re Holden,* 226 B.R. 809 (Bankr.D.Vt.1998); *In re Flynn,* 185 B.R. 89 (S.D.Ga.1995). This District Court, however, elected to follow the line of cases which hold that "emotional distress cannot serve as a basis for awarding compensatory damages unless there is 'some medical or other corroborating evidence to support the debtor's claim which shows that the debtor suffered something more than just fleeting and inconsequential distress, embarrassment, humiliation and annoyance.'" *Patton et al. v. Shade,* No. 00–3197–CV, 2001 WL 694718 (C.D.Ill. Jan. 22, 2001), p. 11, *quoting In re Aiello,* 231 B.R. 684, 691 (Bankr.N.D.Ill.1999). While the issue is not universally settled, it was recently settled in this circuit by the Seventh Circuit's decision in *Aiello v. Providian Financial Corp.,* 239 F.3d 876 (7th Cir.2001), where the Court held that a debtor who suffered only fleeting emotional injury as a result of a creditor's extortionate methods to coerce a reaffirmation agreement could not recover for purely emotional injuries under 11 U.S.C. § 362(h).

■ Notwithstanding the District Court's determination that compensatory damages are not recoverable, punitive damages under 11 U.S.C. § 362(h) may still be warranted for a violation of the automatic stay. *In re Seal,* 192 B.R. 442, 456 (Bankr.W.D.Mich.1996); *In re Solfa-*

*nelli,* 206 B.R. 699, 705 (Bankr.M.D.Pa. 1996) (punitive damages of $10,000 awarded to debtor even though the monetary value of the non-economic harm was difficult to determine). The District Court has directed this Court to explain its reasons for awarding the Debtor $9,000 in punitive damages.

 The primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the creditor's behavior; the prospect of such change is relevant to the amount of punitive damages to be awarded. *In re Riddick,* 231 B.R. 265, 269 (Bankr. N.D.Ohio 1999). *See also In re Novak,* 223 B.R. 363 (Bankr.M.D.Fla.1997) (bankruptcy court gauges punitive award based on gravity of creditor's offense, and sets award at level sufficient to ensure that it will punish and deter). Factors to be considered for an award of punitive damages for a willful violation of the automatic stay include the following: the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor. *In re Flack,* 239 B.R. 155, 163 (Bankr.S.D.Ohio 1999); *In re Klein,* 226 B.R. 542, 545 (Bankr.D.N.J.1998); *In re Wills,* 226 B.R. 369, 376 n. 8 (Bankr.E.D.Va.1998).

 American General is a big company. According to its website, *www.agfinance.com,* "American General Finance is one of the largest consumer finance companies in the country, with over $13 billion in assets and over 75 years of lending experience." American General describes itself as "one of the nation's leading providers of financial services". According to its website, American General's debt ratings are "among the strongest in the consumer finance industry". Thus, it is clear

that American General has the capacity to pay a punitive damages award of $9,000.

American General is also a very sophisticated creditor. According to its website, "American General Finance provides loans, retail financing, and other credit related products to more than two million American families." A computer check of the Court's records indicates that in the year 2000, American General was listed as a creditor in over 500 cases, filed claims in 263 cases, and filed additional pleadings in 201 cases. Any creditor with this many contacts with the Bankruptcy Court is expected to know, understand, and respect the automatic stay.

The actions of American General in this proceeding were deliberate, unwarranted and egregious. American General clearly knew that the Debtor had filed bankruptcy. Indeed, Mr. Patton accosted the Debtor in the hallway outside of the courtroom following her meeting of creditors. Mr. Patton's harassment of the Debtor in the hallway was completely unprovoked by the Debtor. Mr. Patton was acting with actual knowledge or reckless disregard that he was violating the automatic stay.

Following the incident at the Courthouse, the Debtor filed her Motion for Sanctions. American General admits receiving the Motion, but took no action to respond to the pleading or discuss it with Debtor's attorney. American General then ignored the Court's notice of hearing on the Motion for Sanctions. It took a substantial award of sanctions to get the attention of American General.

Punitive damages of $9,000 are appropriate under the circumstances of this case, and they are within the range of punitive damages found in similar cases. As the District Court noted in its Opinion, punitive damages range from $100 to $100,000. *Patton et al. v. Shade, supra,* p. 13, *citing In re Sumpter,* 171 B.R. 835, 846

(Bankr.N.D.Ill.1994). *See In re Solfanelli, supra,* 230 B.R. at 70 (punitive damages of $10,000 supported by conclusion that creditor acted in an overzealous manner); *In re Gullett,* 230 B.R. 321 (Bankr.S.D.Tex.1999) (punitive damages of $40,000 appropriate for creditor's violation of automatic stay); *In re Diviney,* 225 B.R. 762, 777 (10th Cir. BAP 1998) (punitive damages of $40,000 necessary to deter the creditor, and similarly situated creditors in the future, from unilaterally determining the scope and effect of the automatic stay); *In re Novak, supra,* (punitive damages of $20,000 warranted where creditor retained debtor's check in partial satisfaction of pre-petition debt after being notified of bankruptcy filing); *In re Miller,* 200 B.R. 415 (Bankr. M.D.Fla.1996) (actual and punitive damages of $10,000 appropriate where creditor with knowledge of bankruptcy filing continued to contact debtor directly in attempt to collect pre-petition claim); *In re McCormack,* 203 B.R. 521 (Bankr.D.N.H. 1996) (punitive damages of $10,000 were justified where creditor sent debtor a letter expressing intention ultimately to collect disallowed excess attorney fees).

Turning to the issue of attorney's fees, the Debtor's attorney filed a Petition for Compensation of Attorney's Fees on February 9, 2001. Mr. Narmont requests $4,218.50 in fees and costs for work done in the Bankruptcy Court and on the appeal to the District Court. The Petition is supported by a detailed breakdown of the professional services rendered, the time and date said services were rendered, and the hourly rate of the attorney who performed the services. American General Finance filed a Response to Debtor's Petition for Attorney's Fees on March 5, 2001. American General requests that the Petition for Compensation be denied. A hearing was held on March 6, 2001, and the matter was taken under advisement.

■ In this proceeding, American General violated the automatic stay when its representative harassed the Debtor following her meeting of creditors. American General's willful stay violation forced the Debtor to resort to court intervention to enforce her rights. Under these circumstances, an award of attorney's fees is appropriate. *In re Riddick,* 231 B.R. 265, 269 (Bankr.N.D.Ohio 1999). *See also In re Weisberg,* 218 B.R. 740 (Bankr.E.D.Pa. 1998) (award of attorney's fees follows an award of damages for violation of the automatic stay almost as matter of course); *In re Robinson,* 228 B.R. 75 (Bankr.E.D.N.Y. 1998) (court may award attorney's fees for willful stay violation even if debtor has suffered no other compensable harm).

American General does not challenge the amount of time spent by Mr. Narmont or the hourly rate charged by Mr. Narmont. The Court finds that Mr. Narmont's hourly rate of $135 is reasonable for an attorney of his experience and ability. The Court further finds that Mr. Narmont attempted to minimize the fees charged in this case by using a legal research service to perform legal research at a reduced rate.

■ American General argues that "an award of additional attorney's fees incurred on appeal is inappropriate." The Court disagrees. The case law clearly holds that a debtor injured by a creditor's willful violation of the automatic stay is entitled to reasonable appellate attorney's fees as part of her actual damages in resisting a non-frivolous appeal. *In re Walsh,* 219 B.R. 873 (9th Cir. BAP 1998); *In re Carrigg,* 216 B.R. 303 (1st Cir. BAP 1998). Appellate attorney's fees and costs flow from the creditor's violations of the automatic stay. *In re Florio,* 229 B.R. 606 (S.D.N.Y.1999).

■ American General argues that appellate attorney's fees are not warranted

in this case because the Debtor was not successful on appeal. While the District Court did reverse on the issue of compensatory damages, the District Court also found that the Debtor was entitled to an award of attorney's fees and punitive damages. Because the punitive damages constituted approximately 90% of the total damages awarded, the Court finds that the Debtor substantially prevailed on appeal. However, the Court will reduce the requested fee to reflect the fact that the Debtor was not entirely successful.

For the foregoing reasons, the Court assessed punitive damages of $9,000 against Michael Patton and American General Finance and in favor of the Debtor. In addition, the Court finds that Mr. Narmont has provided the necessary documentation to support an award of attorney's fees of $3,800.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.