**In re Richard GULLETT, et ux, Sandra Gullett, Debtors.**

**Richard Gullett, Plaintiffs,**

**v.**

**Continental Casualty Company, Defendants.**

**Bankruptcy No. 97–50457–H5–13. Adversary No. 98–3172.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 6, 1999.

S. John Mastrangelo, Houston, TX, for debtors/plaintiffs.

James D. Ebanks, Houston, TX, for defendant.

### *AMENDED ORDER*

KAREN K. BROWN, Bankruptcy Judge.

Before the Court is the motion for relief from stay filed by Continental Casualty Company (CCC) and the adversary proceeding filed by plaintiff/debtor Richard Gullett against CCC alleging violations of the automatic stay under 11 U.S.C. § 362(a) and (h). In addition, debtor filed an Emergency Motion for Temporary Restraining Order prior to the completion of the trial. The three matters were consolidated for trial and after due consideration, the Court finds that the motion for relief from stay is **DENIED,** the Motion for Temporary Restraining Order is **GRANTED,** and judgment is entered in favor of debtor in the adversary proceeding for the following reasons:

### I. Overview

Plaintiff's Second Amended Petition alleges that with knowledge of the bankruptcy and without obtaining relief from the automatic stay, CCC violated 11 U.S.C. § 362(a) and (h) by: (1) filing suit against debtor and by filing amended pleadings in a state court civil suit, and (2) deducting sums from debtor's workmen's compensation benefits. In response, CCC admits that the pleadings were filed and served on debtor and that it deducted sums from workmen's compensation benefits due to debtor after it received notice of the bankruptcy but argues that Section 362(a) and (h) does not apply because the right to proceed in state court against debtor arose after the bankruptcy was filed.

Plaintiff seeks actual damages, including attorneys fees and punitive damages, for willful, bad faith violations of the automatic stay under 11 U.S.C. § 362(h). Defendant urges

that any damages caused to plaintiff were caused by plaintiff's medical condition, and not by violations of the stay.

### II. Facts

On January 8, 1996, Richard Gullett was injured at his place of employment. He filed a worker's compensation claim with both his employer and the Texas Worker's Compensation Commission (TWCC) and began to receive medical benefits and temporary impairment benefits (TIBS). The worker's compensation carrier for the employer is CCC.[1] Later in 1996, plaintiff's doctor permitted him to return to work with restrictions on his activity. The carrier was notified about plaintiff's work under restrictions. For a time, plaintiff received the same salary that he received prior to the accident. Plaintiff reported his post-accident salary to the TWCC.

The carrier, nevertheless, continued to pay impairment benefits because its representative, Carmen Munoz, mistakenly thought that the medical work restrictions reduced his income. Plaintiff collected these benefits. The parties agree that the overpayment of benefits occurred between July 1996 and November 1996 and equaled $8,619.54.

On May 29, 1997, at a Benefit Review Conference (BRC), Gullett, his attorney, counsel for CCC, and its representative, Munoz, appeared before a hearing officer of the TWCC. CCC alleged that Gullett had collected excess benefits. CCC asserted that Gullett had failed to contact the company to inform them about his work and had committed fraud. At the hearing, the Benefit Review Officer found that due to the overpayment, the carrier should stop paying impairment income benefits (IIBs). In addition, the officer found that debtor's impairment was greater than that asserted by CCC, 27% instead of 12%. After she received the May 29, 1997 BRC order, Munoz stopped paying plaintiff any benefits. A further Contested Case Hearing (CCH) was scheduled for September 9, 1997, and eventually continued to October 10, 1997.

---

1. Plaintiff urges that CCC and CNA acted jointly regarding the coverage and payment of his workmen's compensation benefits and that damages should be calculated with consideration to the total size of both entities. Defendant denies that CNA is involved.

Due to his injury and employment disruption, debtor and his family experienced serious economic strain. Debtor consulted a consumer credit counseling agency and later a bankruptcy lawyer. He and his wife filed Chapter 13 on October 10, 1997.

During the October 10, 1997 CCH hearing, CCC again contended that debtor committed fraud in obtaining benefits while working and both parties presented evidence regarding the degree of plaintiff's impairment. On November 5, 1997, the hearing officer issued an opinion, finding that the "Carrier made overpayments of temporary income benefits to Claimant from an inadvertent mistake." The hearing officer concluded that the carrier was "entitled to offset the sum of $8619.54 plus interest from impairment income benefits. Accrued but unpaid income benefits are payable in a lump sum with interest." The CCH order upheld plaintiff's disability determination at 27%.

On October 30, 1997, John Mastrangelo, bankruptcy counsel for debtor, sent a letter to Munoz informing her about the bankruptcy and explaining that CNA was improperly setting off its debt from benefits owed to Gullett. Mastrangelo stated that unless the set offs ceased, the debtor would sue to recover these monies. In addition, Mastrangelo explained that any such setoffs within 90 days prior to bankruptcy were improper preferences under 11 U.S.C. § 547.

Carmen Munoz received this letter and forwarded it to Jeffrey Diamond, counsel for CCC. On November 11, 1997, Diamond wrote to Mastrangelo stating that it is the "Carrier's position that no monies were deducted from your client's indemnity benefits during the ninety (90) days preceding the commencement of your client's bankruptcy claim, as no benefits were being paid during that period pursuant to the above-referenced interlocutory order." Diamond further stated

that he would file a proof of claim on behalf of CCC and challenge Gullett's discharge based on Section 523 of the Bankruptcy Code.[2]

On November 12, 1997, Diamond received the CCH opinion from his client and he did not tell his client to cease deducting monies due plaintiff without an order of this Court. Diamond did not seek relief from the automatic stay on behalf of his client.

Based on the CCH order of November 5, 1997, Munoz calculated that Gullett was due a lump sum of $8,064.00 for workmen's compensation benefits due as of November 13, 1997. Then, despite receipt of plaintiff's counsel's letter informing her of the bankruptcy and of debtor's position regarding the impropriety of continuing to set off overpayments from debtor's benefits, Munoz deducted from that sum, the carrier's overpayment of $8,619.54 made to debtor from July 8, 1996 to November 13, 1996.[3] After deduction from the $8,064.00 due debtor, Munoz satisfied the remaining amount through deductions from plaintiff's benefits for three weeks.

On November 20, 1997, CCC appealed the decision of the CCH to the administrative appeals panel. Plaintiff and his counsel filed similar appeals as well. CCC challenged the CCH opinion regarding plaintiff's impairment and again sought a fraud finding against debtor. On January 5, 1998, the appeals panel decision upheld the decision of the CCH.

On January 19, 1998, Munoz instructed attorney Diamond to file a petition in state district court.[4] On the last day for filing the petition, February 17, 1998, Diamond filed a petition in the Harris County District Court.

CCC's state court petition filed on February 17, 1998, challenges both the percentage determination of claimant's impairment and alleges that the carrier is entitled to recoup-

---

2. The Court notes that as fraud is dischargeable in a chapter 13, a dischargeability complaint under 11 U.S.C. § 523 is inappropriate in that context.

3. Ms. Munoz specifically states that this setoff is due CNA, not Continental Casualty Co. In addition, there is no apparent calculation for interest due on the debtor's workmen's compensation

benefits as required by the hearing officer's order. Similarly, no interest is calculated on the $8,619.54 owed to CNA. It is not clear whether these sums equate.

4. Under Section 410.252 of the Texas Labor Code, any party has forty days after the appeals panel files its decision with the TWCC to appeal to district court.

ment of $8,619.54 due to claimant's "attempt to defraud the Carrier and/or based on his failure to notify the Carrier that he was working during the time-periods in question." CCC included this allegation despite Munoz's admission that claimant informed her that he was working under physicians restrictions. Gullett filed a pro se answer, stating that the actions of the carrier should be barred by the automatic stay.

Subsequently, on March 27, 1998, plaintiff filed this adversary proceeding under 11 U.S.C. § 362(a) and (h), alleging that CCC violated the automatic stay by its actions in filing the original petition in state district court. Plaintiff does not challenge CCC's actions in defending against his worker's compensation claim but does urge that prosecution of its fraud claim on February 17, 1998, by filing a state civil suit seeking reduction of benefits in state court was a willful, bad faith violation of the automatic stay. CCC in its answer denies any bad faith violation of the automatic stay, and argues that plaintiff is estopped from suit because he filed a workmen's compensation claim seeking benefits. In addition, CCC alleges that its "entitlement to a credit for overpayment of benefits is not a claim against the debtor; instead it is a credit for Continental that arose during the pendency of the claim filed by Gullett." This case was set for an expedited trial.

Subsequently, on May 20, 1998, CCC filed a motion for relief from stay. CCC seeks annulment of the automatic stay back to February 12, 1998, in order to allow it to defend against debtor's workmen's compensation claims. By agreement of the parties, that motion was carried with the adversary proceeding on July 10, 1998. The stay remains in effect pending resolution of the adversary case.

Despite the pendency of these bankruptcy matters, on June 2, 1998, CCC filed a first amended petition in state court again alleging that claimant received benefits due to fraud and/or due to the failure to report to the carrier that claimant was working. Again, CCC sought repayment from debtor for $8,619.54 and its attorneys fees. Then, again on July 7, 1998, CCC filed a second amended petition in state court, this time challenging the impairment as determined by the CCH and the appeals panel, but omitting any allegation of fraud. However, the second amended petition still alleged that claimant had received benefits he was not entitled to receive and sought reimbursement for attorneys fees. Again this second amended petition was filed without order of the bankruptcy court and despite the fact that the issue of CCC's right to proceed in state court was set for trial before this Court on July 10, 1998.

Trial in this matter began and at the close of the plaintiff's case, CCC moved for a directed verdict based on the plaintiff's alleged failure to properly plead his case. This Court denied this motion and defendant moved for a continuance on the grounds that it was unprepared to respond to allegations that plaintiff alleged that it violated the stay. In an abundance of caution and because plaintiff and defendant seemed to be trying very different cases, this Court granted the defendant's motion for continuance and permitted plaintiff to file a motion for a trial amendment to make clear for defendant the nature of plaintiff's allegations.

This Second Amended Complaint was filed on August 20, 1998. Plaintiff again alleged violations of the automatic stay under 11 U.S.C. § 362(a) and (h), specifically, that CCC filed its civil suit seeking reimbursement for TIBS benefits, filed repeated pleadings in that civil suit, and took deductions from benefits due debtor based on overpayments that were claims against debtor arising prior to the filing of the bankruptcy case. Defendant objected to this trial amendment and the Court overruled the objection. CCC did not amend its original answer.

In addition, on December 7, 1998, plaintiff filed a motion for temporary restraining order based on defendant's continued conduct in seeking to thwart and stop the TWCC proceedings ostensibly on the basis of plaintiff's bankruptcy. That motion was heard with the continued trial of the adversary proceeding. This motion was necessitated by a letter sent by Diamond to the TWCC. See Appendix A. In the summer of 1998, debtor applied for supplement income benefits

(SIBs). Instead of merely disputing debtor's entitlement to benefits, Diamond, counsel for CCC, wrote to the TWCC urging that debtor's "worker's compensation case be stayed and that the Carrier be relieved of any obligation to pay Mr. Gullett worker's compensation benefits or to participate in any worker's compensation proceeding during the pendency of his bankruptcy." Debtor's confirmed chapter 13 plan continues through January 14, 2001. Although the TWCC hearing went forward, debtor contends that CCC uses debtor's bankruptcy as a red flag to stymie and obstruct debtor's ability to present his worker's compensation case.

Trial continued on December 14, 1998. Plaintiff's counsel offered testimony regarding attorneys fees and plaintiff testified regarding emotional stress and embarrassment due to the allegations by CCC that he committed fraud.

### III. CCC's Contentions

Initially, CCC contends that debtor has failed to properly plead an action for violation of the automatic stay. Further, CCC contends that its actions were proper and not subject to the automatic stay because: (1) it was defending against plaintiff's worker's compensation claim; (2) it was complying with its rights under the Texas Labor Code; (3) its rights arose after the bankruptcy was filed; and (4) its claim for overpayment arose during the worker's compensation proceeding and is not a claim against debtor or debtor's estate. Moreover, CCC contends that by initiating an action under the Texas Labor Code, debtor is estopped from asserting his rights under the Bankruptcy Code. At issue then are whether the following actions by CCC violated the stay: (1) CCC's deductions of its overpayments from plaintiff's benefits; (2) CCC's filing a civil suit and amended pleadings in state court against debtor; and (3) CCC's counsel letter to the TWCC.

### IV. Sufficiency of Debtor's Pleadings

11 U.S.C. § 362(a) states:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the set off of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

In his original complaint and all amended complaints, plaintiff has pled 11 U.S.C. § 362(a). CCC did not file a motion for more definite statement under Rule 8. After reviewing the complaints and amended complaint, this Court finds that the complaint is sufficient to allege a violation of 11 U.S.C. § 362(a) applicable to the facts alleged, including section 362(1), (2), (3), (6) and (7); *see Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (". . . all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds

upon which it rests.") *See also United States v. Cooper,* 725 F.2d 756, 760 (D.C.Cir. 1984). CCC is represented in this Court by very able counsel who understood the nature of plaintiff's case.

### V. Property of the Estate

■ As to whether debtor's entitlement to benefits is property of the estate, the Bankruptcy Code provides that property of the estate includes generally all legal or equitable interests of the debtor. 11 U.S.C. § 541. By definition, property of the estate includes property of the debtor needed for a fresh start. Whether the property of the estate may later be considered exempt is determined by Section 522 which permits an individual debtor to exempt certain property of the estate. *In re Wischan,* 77 F.3d 875 (5th Cir.1996). Consequently, this Court concludes that even if debtor were to later claim that worker's compensation benefits were exempt under Section 522, Article XVI Section 28 of the Constitution of the State of Texas 1876, and The Texas Labor Code Section 408.201, any benefits due plaintiff on October 10, 1997, the date of the bankruptcy petition, constituted property of the estate on the date that CCC began deducting the overpayments from debtor's benefits November 12, 1997.

### VI. Recoupment

■ Generally, recoupment of pre-petition overpayments of benefits from post-petition benefits arising from the same transaction does not violate the automatic stay if recoupment is provided for by state law. " 'Recoupment and setoff rights are determined by nonbankruptcy law, which ordinarily is state law.' ... In light of the Bankruptcy Code's strong policy favoring equal treatment of creditors and bankruptcy court supervision over even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed." *In re McMahon,* 129 F.3d 93, 96–97 (2d Cir.1997) (citations omitted). The reasoning of the courts is that recoupment is not subject to the stay because the debtor has no interest in the funds against which recoupment is allowable and they are not considered property of the estate. *In re Holford,* 896 F.2d 176, 178–179 (5th Cir.1990).

Texas law is in conflict as to whether recoupment is allowed from future benefits by an insurance carrier of an erroneous overpayment of worker's compensation benefits. *Cf.* 1992 WL 448316 (Tex.Work.Comp.Com. appeal no. 92291, Aug. 17, 1992); 1994 WL 102761 (Tex.Work.Comp.Com. appeal no. 94135, March 16, 1994.) The 1992 decision of the Texas Worker's Compensation Commission interprets Texas law prior to the enactment of the current Texas Labor Code. The Commission found that the Texas Workers' Compensation Act of 1989 provided for redemption from future benefits where a person had obtained benefits fraudulently. The 1992 case, however, involved no fraud on the part of the employee, simply an erroneous overpayment by the carrier, so the Commission found against a right of recoupment by the carrier, stating, "We do not see an obvious legislative intent that calls for an implication that recoupment is allowed in areas of the 1989 Act that do not address it when it is specified elsewhere." In contrast, the 1994 decision finds that under the facts of that case the carrier was entitled to recoup a previous overpayment of temporary income benefits from claimant's impairment income benefits.

■ The current Texas Labor Code provisions are similar to those reviewed in the 1992 opinion; thus, the opinions appear to directly conflict.[5] Given this state of Texas law on recoupment for an erroneous overpay-

---

5. There appear to be no state court cases on point involving worker's compensation. However, the Texas cases involving overpayment to the insured by the insurance company are similarly divided: Compare *Community Mutual Ins. Co. v. Owen,* 804 S.W.2d 602, 605–606 (Tex.App.— Houston [1st Dist.] 1991, writ denied) (Held: for insurance company to be entitled to restitution for over payment from insured it must be shown that the insured (1) wrongfully secured a benefit or passively received a benefit that (2) it was unconscionable to retain and (3) that the insured did not change position in reliance on the payments) and *Lincoln Nat'l Life Ins. Co. v. Rittman,* 790 S.W.2d 791 (Tex.App.—Houston [14th Dist.] 1990, no writ) (Insured who accepted coverage as a benefit of employment is not required to "ferret out" the policy terms to determine whether the insurer is properly paying benefits) with *Benson v. Travelers Ins. Co.,* 464 S.W.2d 709 (Tex.Civ.App.—Dallas 1971, no writ).

ment by the carrier, and the overriding bankruptcy considerations of equal distributions of available funds to creditors in accordance with the Bankruptcy Code, this Court finds that CCC's actions in reducing debtor's benefits and in pursuing its court remedies violated the automatic stay. This Court finds that CCC's attorney Diamond was aware of the conflict in Texas law at the time that he filed the state civil case and at the time CCC took deduction of the overpayments from plaintiff's benefits.

■ ˙ Further, under the current Texas Labor Code, it is an administrative violation to obtain benefits fraudulently, subjecting the violator to personal liability for full repayment of the fraudulently obtained benefit, monetary penalties, and a cease and desist order. Tex. Labor Code §§ 415.008, 415.021. CCC's pursuit of a finding against debtor for fraud clearly was sought in order to raise an administrative violation entitling it to judgment against debtor personally rather than simply recoupment of an overpayment from future benefits.

The Court finds, moreover, that as the BRC found no fraud on debtor's part and the evidence introduced at the trial before this Court showed no fraud by the debtor, that debtor committed no fraud in accepting the carrier's erroneous overpayments. The Court concludes that CCC violated the automatic stay in offsetting debtor's benefits postpetition, in continuing its administrative appeals without lifting the automatic stay, and in its pursuit of its claim for fraud and attorneys fees. This Court finds that CCC's appeal with notice of the bankruptcy of the CCH opinion on November 20, 1997, to the Appeals Panel, CCC's original petition filed in state court on February 17, 1998, CCC's first amended petition filed June 2, 1998, and CCC's second amended petition filed July 7, 1998, all violated the automatic stay.[6]

### VII. Whether CCC's Claim Arose Pre-petition or Post-petition

■ Claims arising post-petition are not dischargeable in bankruptcy and are not covered by the stay. *In re Continental Air Lines, Inc.*, 61 B.R. 758, 775–780 (S.D.Tex.

1986); *In re W.L. Jackson Mfg. Company*, 50 B.R. 498, 502 (Bankr.E.D.Tenn.1985). Thus, an analysis of when a claim or cause of action accrued is important in determining whether its pursuit violates the automatic stay.

In *In re Oxford Management, Inc.*, 4 F.3d 1329, 1335 n. 7 (5th Cir.1993), the court held that "A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition." *See also In re Eli Witt Co.*, 213 B.R. 396, 400 (Bankr. M.D.Fla.1997) (Held: the debtor/insured's objection to creditor insurance company's claims for reimbursement for payments for covered employees was granted and that the insurance company's postpetition demand for reimbursement for claims arising from accidents or occurrences occurring prepetition should be classified as prepetition unsecured claims.)

■ Here, CCC's overpayments happened between July 1996 and November 1996. CCC's "right to payment", if any, arose then. 11 U.S.C. § 101(5)(A). Later approval by the TWCC hearing officers simply validated that right.

### VIII. Counterclaims and Defenses

■ Plaintiff notified CCC about the bankruptcy case on or about October 30, 1997 and proceeded to prosecute his workmen's compensation claim. Plaintiff does not complain that CCC has defended against the TWCC's disability findings in his favor, only that CCC repeatedly raised counterclaims alleging fraud or a right to reimbursement in violation of the automatic stay. CCC argues that it was only defending against plaintiff's claims. "The automatic stay of the Bankruptcy Code extends only to actions 'against the debtor.' 11 U.S.C. § 362(a)." *In re U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994). In *In re U.S. Abatement Corp.*, the court found no violation of the stay where creditor moved only for summary judgment against debtor's offensive claims. Since debtor's offensive claims were not subject to the stay, creditor's defense against those claims did not violate the stay. Consequent-

---

6. However, plaintiff only seeks damages for violations occurring on or after February 17, 1998.

ly, mere defense to actions initiated by debtor are not stayed by Section 362. However, as stated by the Second Circuit:

> ... since a defendant who is awarded judgment on a counterclaim is no less a judgment creditor than is a plaintiff who is awarded judgment on a claim asserted in the complaint, we construe the term "action or proceeding," for purposes of § 362(a)(1), to include any pleading that asserts a claim on which relief is sought. Thus, an answer that asserts a counterclaim against a plaintiff who becomes a bankruptcy debtor is an "action or proceeding against the debtor" within the meaning of § 362(a)(1), notwithstanding the fact that the plaintiff initiated the lawsuit.

*Koolik v. Markowitz,* 40 F.3d 567, 568 (2d Cir.1994).

 As to CCC's workmen's compensation and state court suit, in determining the application of Section 362, a court must look to the nature of each claim or counterclaim to determine whether the stay applies. "Thus, within one case, actions against a debtor will be suspended even though closely related claims asserted by the debtor may continue. Judicial proceedings resting on counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out claims asserted by the plaintiff are stayed." *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991); *see also In re Lessig Const., Inc.,* 67 B.R. 436 (Bankr.E.D.Pa.1986) (in adversarial action brought by debtor in bankruptcy court, defendant must obtain relief from automatic stay before asserting any counterclaim against debtor); *Action Drug Co., Inc. v. Overnite Transp. Co.,* 724 F.Supp. 269 (D.Del.1989) (where plaintiff-debtor enters bankruptcy, defendant may not assert counterclaim against bankrupt plaintiff), *aff'd without op.,* 902 F.2d 1558 (3d Cir.1990).

 This Court finds that CCC's appeal with notice of the bankruptcy of the CCH opinion to the appeals panel on November 20,

1997, CCC's original petition filed in state court on February 17, 1998, CCC's first amended petition filed June 2, 1998, and CCC's second amended petition filed July 7, 1998, all violated the automatic stay by asserting counterclaims alleging relief such as fraud, claims for reimbursement, and attorneys fees.

## IX. Estoppel

 CCC urges that plaintiff is estopped from asserting rights under the Bankruptcy Code because he filed the underlying workmen's compensation proceeding. Estoppel bars recovery for a party because of some improper or inconsistent act that results in an injustice to another who relied on the act. *Heckler v. Community Health Services of Crawford County, Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Greer v. Franklin Life Ins. Co.,* 109 S.W.2d 305, 315 (Tex.Civ.App.—Dallas 1937). However, CCC failed to show evidence of improper, misleading, or inconsistent action by plaintiff on which it relied that would result in an injustice to it if the bankruptcy laws are applied.[7]

 Instead, CCC appears to allege that plaintiff has waived his right to assert a violation under 11 U.S.C. § 362(a) and (h) because he filed a compensation claim. However, the automatic stay serves the interests of both debtors and creditors. Consequently, the debtor may not waive the automatic stay or limit its scope. "Only the bankruptcy court with jurisdiction over a debtor's case has the authority to grant relief from the stay of judicial proceedings against the debtor." *Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1204–1205 (3d Cir. 1991) (Counterclaim by defendant against debtor for conversion violates the stay). *Ostano Commerzanstalt v. Telewide Systems, Inc.,* 790 F.2d 206, 207 (2d Cir.1986), *aff'd in part, rev'd in part,* 794 F.2d 763 (2d Cir. 1986). *See also Cathey v. Johns–Manville Sales Corp.,* 711 F.2d 60, 62–63 (6th Cir.

---

**7.** Fed. Rules of Civil Procedure, Rule 8(c) and Texas Rules of Civil Procedure, Rule 94 require a party to affirmatively plead and prove estoppel and waiver as affirmative defenses. *Wright v. E.P. Operating Ltd. Partnership,* 978 S.W.2d 684 (Tex.App.—Eastland 1998).

1983), *cert. denied,* 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986).

CCC argues that it could not have protected its rights in state court if it had been forced to file a motion for relief from stay with this Court. However, the stay lifts by operation of law thirty days after the filing and service of a proper motion for relief and emergency consideration is always available. 11 U.S.C. § 362(e). Moreover, since CCC filed its motion for relief from stay almost three months after it filed its state case against plaintiff, this Court finds that fear of losing its state rights was not the motivating factor for CCC's failure to seek relief from stay. Instead, based on all the evidence, this Court finds that counsel for CCC and its representatives willfully intended to violate the bankruptcy stay and acted in bad faith. In his testimony, Diamond, counsel for CCC, specifically testified that he considered the implications of the automatic stay and filed his state petition anyway.

## X. DAMAGES

Plaintiff sues under 11 U.S.C. § 362(h) which states: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

 Section 362(h) creates a private right of action for a debtor injured by a willful violation of the stay. *Pettitt v. Baker,* 876 F.2d 456 (5th Cir.1989). Under section 362(h), a plaintiff must prove: (1) defendant had notice of the bankruptcy; (2) defendant took actions in violation of the stay; (3) defendant's actions were willful in order to obtain compensatory damages and costs; and (4) defendant's actions were in bad faith in order to obtain punitive damages. Knowledge of the bankruptcy is considered knowledge that there is an automatic stay in effect. *In re Lile,* 103 B.R. 830, 837 (Bankr.S.D.Tex. 1989), *aff'd,* 161 B.R. 788 (S.D.Tex.1993), *aff'd in part,* 43 F.3d 668 (5th Cir.1994).

 Proof of willful intent by the defendant shall entitle plaintiff to compensatory damages and costs including reasonable attorney's fees. Willfulness is defined as a "deliberate act." *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1104–5 (2d Cir. 1990). Specific intent to violate the stay is not necessary to liability under section 362(h). *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989) (Creditor's motion to withdraw the reference violated the stay). Damages are appropriate where defendant knew of the stay and the actions violating the stay were intentional. *Id., c.f. Mewes v.. Bankwest (In re Mewes),* 58 B.R. 124, 128 (Bankr.D.S.D. 1986). (The willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order.); *Wagner v. Hayward Ivory (In re Wagner),* 74 B.R. 898 (Bankr.E.D.Pa.1987).

 Punitive damages may be available on a showing of "maliciousness or bad faith" actions by the defendant. *In re Solis,* 137 B.R. 121, 133 (Bankr.S.D.N.Y.1992). Where the defendant acts with actual knowledge of the violation of a federal right or reckless disregard that he is doing so, punitive damages are appropriate. *In re Wagner,* 74 B.R. 898, 904 (Bankr.E.D.Pa.1987) (Debtor entitled to punitive damages for threats and intimidation by creditor despite knowledge of bankruptcy.)

In *Pacific Mut. Life Ins. Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) the Supreme Court held that punitive damages assessed against insurer, although large in proportion to insured's compensatory damages and out-of-pocket expenses, did not violate the due process. Similarly, the court in *Eichenseer v. Reserve Life Ins. Co.,* 934 F.2d 1377, 1381 (5th Cir.1991) held that $500,000 punitive damages award against insurer did not violate due process clause of the United States Constitution.

In analyzing the test to be derived from *Haslip,* the Fifth Circuit found:

> In essence, the Court in *Haslip* reasoned that the constitutionality of an award of punitive damages is a function of two practical considerations: (1) whether the circumstances of the case indicate that the award is reasonable, and (2) whether the procedure used in assessing and reviewing

the award imposes a sufficiently definite and meaningful constraint on the discretion of the fact finder.

*Id.* at 1381.

CCC's actions have necessitated responses by plaintiff, have compelled plaintiff to file suit in this court, and have caused plaintiff to incur attorneys fees. Plaintiff represented himself pro se in state court and now is represented by state counsel. There have been no actual damages shown attributable to defendant's violations of the stay. However, plaintiff alleges postpetition emotional stress from CCC's continued allegations of fraud by plaintiff regarding the overpayment of benefits and seeks punitive damages for defendant's arrogant, bad faith in continually violating the stay.

 Plaintiff contends and Munoz testified that plaintiff informed CCC about his return to work. Nevertheless, CCC filed a state petition alleging that plaintiff defrauded CCC by not reporting his working. Specifically, CCC alleged that it should recover due to claimants' "attempt to defraud the Carrier and/or based on his failure to notify the Carrier that he was working during the time-periods in question." Diamond contends that the CCC allegation was justified because plaintiff failed to also notify both the carrier and the TWCC about the exact salary he received from July 1996 to November 1996—the period of overpayment. It is admitted that plaintiff notified the TWCC of the employment and the salary and directed CCC to check with the TWCC. This Court finds that there is no evidence that there was any basis for the fraud allegation at issue as stated in the state petition based on the testimony of Munoz.

CCC has repeatedly violated the automatic stay at every opportunity. When it finally filed a motion for relief from stay, there was no attempt to conduct proper service on parties in interest under the rules. Bankruptcy Local Rule 4001.

On December 7, 1998, plaintiff filed a motion for temporary restraining order based on defendant's continued conduct in seeking to thwart and stop the TWCC proceedings ostensibly on the basis of debtor's bankruptcy. That motion was heard with the continued trial of the adversary proceeding. The Court finds that Diamond's letter to the TWCC on November 20, 1998 was intended not to defend against Gullett's claims for future benefits, but to stop then entirely. The letter is attached as Appendix A. Such tactics are improper. The Court finds that this was an intentional and bad faith violation of the automatic stay.

## XI. CONCLUSION

This Court has reviewed the plaintiff's evidence regarding attorneys fees under the standards set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974) and finds that an award of $29,458.00 plus $800 for trial on December 12, 1998, totaling $30,258.00 to date is appropriate. This Court **DENIES** CCC's motion for relief from stay for failure to properly notice and serve creditors and the trustee under Bankruptcy Local Rule 4001.

Based on the four violations proven by plaintiff which this Court finds to have occurred with knowledge of the bankruptcy and in bad faith, that is, the filing of the State civil petition, the two amended pleadings and the deductions of overpayments from plaintiff's benefits, the Court awards $40,000 to plaintiff in sanctions, plus interest from the date of this judgment. Ten thousand per incident is a conservative sum to assess against CCC, but perhaps notice will be taken with regards to future actions in such cases. In addition, the Court awards plaintiff the reduced overpayments $8,619.54, plus interest from November 12, 1997. Counsel for plaintiff is **ORDERED** to submit a proposed final judgment in accordance with this amended order.

APPENDIX A

EXHIBIT "B" PG1

GALLOWAY. JOHNSON. TOMPKINS & SURR
A PROFESSIONAL LAW CORPORATION

3555 TIMMONS LANE
SUITE 1255
HOUSTON, TEXAS 77027
TELEPHONE (713) 599-0700
TELECOPY (713) 599-0777

W E. GALLOWAY†
MICHAEL JOHNSON‡
ES M. TOMPKINS*†
STHY F. SURR†‡
WAS J. SMITH*†
IER S. ALLEN†
RY S. CANADAY*††
HASP J. DUPLANTIER, JR.†
MICHAEL SHIRLEY, JR.†
IN S. PHASE, III††
*FREY L. DIAMOND‡

ONE SHELL SQUARE
701 POYDRAS STREET, SUITE 4040
NEW ORLEANS, LOUISIANA 70139-4003
TELEPHONE (504) 525-6802
TELECOPY (504) 525-2456

P.O. BOX 16043
PENSACOLA, FLORIDA 32507-6043
25 SAYBRIDGE DRIVE
GULF BREEZE, FLORIDA 32561
TELEPHONE (850) 934-3000
TELECOPY (850) 934-3040

GERALD A. MELCHIODE†
JASON P. WAQUESPACK†
LES PIGNETTO
DAVID JEBYEUS
BENJAMIN B. EUOTICHS†‡
MICHAEL J. SOUTERT
NATACHA B. SINKERHART†
WILLIAM S. CLARK††
ELSA A. ANSALDUA‡
CHRISTINA I. SPRESSERT
KENNETH G. MORRIS‡†
KEVIN A. MARKET
DANIEL I. KLEBANY
MARY LOU HAURES†
J. ERIC JOHNSON†
MATTHEW B. MOSCONI†
TODD K. HOBGS†
ANTHONY L. MASSAT
KIMBERLY G. ANDERSON††
DOUGLAS V. FRERET†
ANDREW L. SCHRECK

Please Reply To Houston Office

ADMITTED IN TEXAS
ADMITTED IN LOUISIANA
ADMITTED IN FLORIDA
ADMITTED IN WASHINGTON D.C.
ADMITTED IN MISSISSIPPI
ADMITTED IN GEORGIA
ADMITTED IN ALABAMA

November 20, 1998

VIA FACSIMILE (713) 869-0160
AND CERTIFIED MAIL

Texas Workers' Compensation Commission
Houston West Field Office
1445 North Loop West, Suite 600
Houston, Texas 77008

Re: Claimant: Rick Gullett
 TWCC No.: 9606965303
 DOI: January 8, 1996

To Whom It May Concern:

Please be advised that Mr. Gullett, the Claimant, filed bankruptcy on October 10, 1997. Additionally, he has made a claim against the Carrier, Continental Casualty Company, in the pervue of his bankruptcy action based upon alleged violations of the bankruptcy stay. In certain proceedings/hearings which have taken place regarding the claim that Mr. Gullett has brought against Continental Casualty Company in the bankruptcy arena, Mr. Gullett has stated that any action on the part of Continental Casualty Company with respect to workers' compensation claim Mr. Gullett has filed against Continental Casualty Company under the Texas Workers' Compensation Act is a violation of the bankruptcy stay. According to Mr. Gullett, any denial of Mr. Gullett's request for supplemental income benefits would be a violation of the stay and any communication by the Carrier with the Texas Workers' Compensation Commission would also be a violation of the stay. The Carrier does not agree with any of the positions stated by Mr. Gullett.

However, in light of the Claimant's assertions set out above, it may be advisable that Mr. Gullett's workers' compensation case be stayed and that the Carrier be relieved of any obligation to pay Mr. Gullett any workers' compensation benefits or to participate in any workers' compensation proceeding during the pendency of his bankruptcy. In the alternative, the Carrier demands that the TWCC require Mr. Gullett to state his position, in writing, regarding the effects, if any, of his bankruptcy proceedings on his claim for workers' compensation benefits under the Texas Workers' Compensation Act. In other words, Mr. Gullett cannot have it both ways. The

GALLOWAY, JOHNSON, TOMPKINS & BORR
A PROFESSIONAL LAW CORPORATION

EXHIBIT "B" Pg 2

TWCC
November 20, 1998
Page 2

cannot seek workers' compensation benefits from the Carrier, yet complain when the Carrier defends against his entitlement to the same. In order to prevent this unfair and unjust result and/or any accusations regarding the same, Mr. Gullett's case should be stayed or he should be required to state his position in writing regarding these issues prior to workers' compensation proceedings moving forward. If Mr. Gullett's arguments regarding his bankruptcy and the applicability of the stay are taken to the logical conclusion, the TWCC would also be in violation of the stay by participating and conducting any workers' compensation proceedings in Mr. Gullett's case.

Should you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Jeffrey L. Diamond

bo1613\217\Utwcc 111198

CC: Bernardo Eureste
VIA Hand Delivery 11/23/98