**In re Louise G. CLARK, Debtor.**

**Louise G. Clark, Plaintiff,**

v.

**Washington Mutual Home Loans, Defendant.**

**Bankruptcy No. 02–11441.
Adversary No. 02–01089A.**

United States Bankruptcy Court,
S.D. Georgia,
Augusta Division.

Aug. 29, 2003.

Angela McElroy, Augusta, GA, for Debtor.

Barnee C. Baxter, Augusta, GA, for trustee.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

JOHN S. DALIS, Chief Judge.

Louise G. Clark (hereinafter "Plaintiff") filed this adversary proceeding on November 11, 2002. On June 2, 2003, Washington Mutual Home Loans (hereinafter "Washington"), filed a motion for summary judgment. On June 23, 2003, Plaintiff

filed her response to Washington's motion for summary judgment and a counter motion for summary judgment. This Court has jurisdiction to hear this matter under 28 U.S.C. § 157(b)(1) & (b)(2)(A)(B)(C)(N) & (O) and 28 U.S.C. § 1334.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56 of the Federal Rules of Civil Procedure applies to motions for summary judgment in bankruptcy adversary proceedings. Fed. Rules Bkrtcy. Proc. Rule 7056. The party seeking summary judgment bears the initial burden of demonstrating that no dispute as to any material facts exist. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598,1608, 26 L.Ed.2d 142 (1970). "[A] party seeking summary judgment always bears the initial responsibility of informing the...court [of] the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). Once the moving party has properly supported its motion with such evidence, the party opposing the motion " 'may not rest upon mere allegations or denials of his pleading, but ...must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968) and Fed.R.Civ.P.

56(e)). "In determining whether the movant has met its burden, the reviewing court must examine the evidence in a light most favorable to the opponent of the motion. All reasonable doubts and inferences should be resolved in favor of the opponent." *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1502 (11th Cir. 1985) (citations omitted), *cert. denied*, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The undisputed facts are as follows. On June 28, 2001, Plaintiff borrowed One Hundred Ten Thousand Five Hundred Dollars ($110,500.00) from MIT Lending (hereinafter "MIT") as evidenced by a promissory note of same date. To secure repayment of this loan, Plaintiff conveyed the residential real property located at 1440 Clark Road, Augusta, Richmond County, Georgia 30906, and the improvements located thereon (hereinafter "Property") to MIT by security deed dated the same day. The deed was recorded in the Richmond County, Georgia real property records.

MIT's interest in the security deed was ultimately transferred to Federal National Mortgage Association (hereinafter "Fannie Mae") for value. Washington, as successor in interest by merger to Fleet Mortgage Corp., is the servicer of the mortgage loan on behalf of Fannie Mae.

Plaintiff defaulted on the terms of the promissory note and the security deed by failing to make the December, 2001 and subsequent payments. Payments received by Washington post-petition have been credited to post-petition months.

On April 1, 2002, Plaintiff sent a check in the amount of $1,748.00 to Washington. This check was returned uncashed to the Plaintiff on April 19, 2002 because the amount did not represent the total amount due on Plaintiff's loan and Washington

would no longer accept partial payment. On April 12, 2002, Washington sent notice to the Plaintiff that the foreclosure was to be held on May 7, 2002. The evidence shows that the notice provided that Washington would be entitled to attorney's fees as set forth in the loan agreement but it did not contain language explaining to the Plaintiff her state law right to pay the full amount due (principal and interest) within 10 days of said notice in order to avoid attorney's fees.[1]

On May 2, 2002, the Plaintiff filed her Chapter 13 bankruptcy case, No. 02–11441. On July 23, 2002, the Plaintiff filed a motion for leave to sell the Property.

Washington filed its Proof of Claim on August 19, 2002 (hereinafter "Proof of Claim")in the amount of $114,584.61. Washington's Proof of Claim contained only the principal amount of the debt, accrued pre-petition interest and late charges. Washington is an over-secured creditor in Plaintiff's bankruptcy case.

By Order entered August 26, 2002, I approved Plaintiff's motion for leave to sell the Property. This Order required Plaintiff "to pay off the lienholder, Washington Mutual, in full with the remaining funds from said sale to be turned over to the Trustee...".

On September 5, 2002 Washington filed an objection to the confirmation of Plaintiff's bankruptcy plan. On September 10, 2002 Plaintiff filed an objection to Washington's Proof of Claim. Washington withdrew its objection to the confirmation of the plan on September 23, 2002. The plan was confirmed on September 23, 2002.

The Order confirming the plan did not affect Washington's Proof of Claim.

A hearing on Plaintiff's objection to the Proof of Claim was set for November 14, 2002. Plaintiff withdrew her objection on November 13, 2002, after the filing of this adversary proceeding.

The Settlement Statement prepared on U.S. Department of Housing and Urban Development approved form dated October 4, 2002, lists the payoff for the first mortgage loan in the amount of $114,827.02. On October 8, 2002, Washington, at the request of the Plaintiff, sent the Plaintiff a payoff statement in the amount of $117,732.29. This figure includes a foreclosure/bankruptcy fee of $1,060.00 and other fees. On November 11, 2002, Plaintiff filed this adversary complaint alleging violations of 11 U.S.C. § 506(b), 362(a), Fed. Rule Bkrtcy. Proc. 9016 and O.C.G.A. § 13–1–11.

█ I will first address the Plaintiff's cross motion for summary judgment. As Defendant correctly points out, the last day to file motions, including summary judgment motions, as set in the scheduling order, was May 30, 2003. Plaintiff did not file her motion for summary judgment until June 23, 2003. The period allotted to respond to another party's motion for summary judgment does not extend the time to file a motion for summary judgment. The cross-motion for summary judgment filed by Plaintiff is dismissed as untimely.

The Plaintiff alleges that Washington's Proof of Claim limits its claim to $114,827.02 and Washington's attempt to recover more than that amount when it quoted Plaintiff a higher payoff quote con-

---

1. Official Code of Georgia Annotated (O.C.G.A.) § 13–1–11 states in relevant part: "...[T]he holder of the note... shall... notify in writing the maker, endorser, or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, endorser, or party sought to be held on said obligation has ten days from the receipt of such notice to pay the principal and interest without the attorney's fees."

stitutes a violation of 11 U.S.C. § 506 and § 362 and Rule 9016. Furthermore, Plaintiff alleges that Official Code of Georgia Annotated (O.C.G.A.) § 13–1–11 bars Washington's claim for attorney's fees.

■ First, as Washington again correctly points out, Rule 9016 has no application in this case. It wasn't until Plaintiff filed her reply to Washington's motion for summary judgment and cross motion that Plaintiff apparently realized the mistake. At no point has Plaintiff sought to amend the complaint. It is Plaintiff's responsibility through her attorney, to monitor her complaint, proofread same prior to filing and by amendment correct any defects, not the court's. Summary judgment for the Defendant, Washington Mutual, is appropriate on the claimed violation of Rule 9016.[2]

The remaining issues are Plaintiff's claims under 11 U.S.C. § 506, § 362(a), and O.C.G.A. § 13–1–11.

Section 506(b) of the Bankruptcy Code states:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater that the amount of such claim, there shall be allowed to the holder if such claim, interests on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

■ An over-secured creditor is allowed to include as part of its claim attorney's fees, interests and costs as provided for in the loan agreement. 11 U.S.C. § 506(b); *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333 (11th Cir.2000). To be included as part of its secured claim, the creditor must show that it is an over-secured creditor, that the fees were provided for in the loan agreement, and that the fees are reasonable. *In re Welzel*, 275 F.3d 1308 (11th Cir.2001).

Plaintiff claims that because Washington's Proof of Claim did not include any attorney's fees, it is barred from collecting them without first obtaining approval of this Court under § 506. Plaintiff argues that a debtor needs to know the amount of the fees because otherwise he/she would not know how much to pay the creditor.

■ Washington's filed and allowed Proof of Claim does not include attorney fees or costs. However, in the exhibit to the Proof of Claim, a footnote provides:

> Please be advised that your account may be assessed a reasonable fee for the preparation of this claim and other legal work associated with this case. If such fees are not included in this claim, they may be collected in the future pursuant to the terms of your security agreement, section 1322(B)(2) of the Bankruptcy Code, and other applicable law.

This language gives notice that fees may be added to the claim. *See Fawcett v. U.S.*, 758 F.2d 588, 12 C.B.C.2d 1011 (11th Cir.1985) (holding that notice to the debtor of assertion of post-petition interest in proof of claim was necessary and satisfied by the following: "For purposes of Section 506(b) of the Bankruptcy Code, post-petition interests may be payable.")

■ However, under § 506 the fees need to be deemed reasonable by this Court to be allowed. Because the fees have not been presented to me for a reasonableness determination, I cannot determined whether those fees are properly a claim in the complaint.

---

2. Plaintiff does not have a Rule 2016 asserted cause of action as she failed to allege that

part of Washington's allowed secured claim. Because I find that there are genuine issues of material fact remaining to be determined summary judgment is not appropriate on this issue.

The Plaintiff also claims that Washington's larger payoff quote violates 11 U.S.C. § 362. Plaintiff argues that the remaining funds from the sale constitutes property of the estate because the order on the motion for leave to sell the property provides that the remaining funds will go to the Trustee for payment on other allowed claims. Post-confirmation all property of the estate revests in the debtor except as otherwise provided in the plan or the order confirming the plan. 11 U.S.C. § 1327(b). Therefore, all property of the estate becomes property of the debtor upon confirmation except as necessary to comply with the plan. Here, the order confirming the plan states that all property revests in the debtor; but in order to comply with the plan, the Property was sold and as stated in the order for leave to sell, the remaining proceeds were to go to the Trustee for disbursement under the plan. These remaining proceeds constitute estate property.

■■■■ order to recover for a creditor's violation of the automatic stay, "a plaintiff must prove: 1) defendant had notice of the bankruptcy; 2) defendant took actions in violation of the stay; 3) defendant's actions were willful in order to obtain compensatory damages and costs; and 4) defendant's actions were in bad faith in order to obtain punitive damages". *In re Gullett*, 230 B.R. 321, 331 (Bankr.S.D.Tex.1999). Plaintiff argues that the payoff quote was an attempt to collect attorney's fees not allowed in Washington's claim, and thus it was an attempt to recover money from property of the estate. Washington contends that the payoff quote simply stated how much money was needed to pay off the creditor

in "full" as stated in the Order (including allowed fees under § 506).

[8] ■■■■ I have yet to determine if the attorney's fees demanded are reasonable under § 506 and thus included as part of the secured claim, there remain issues of material fact to be determined. Again, summary judgment is not appropriate.

[9] ■■■■ the Plaintiff claims that because the notice sent by Washington prior to foreclosure did not include the language required under O.C.G.A. § 13–1–11, Washington is not entitled to attorney's fees. O.C.G.A. § 13–1–11 requires that a creditor send a notice informing the responsible party that if payment is received within 10 days attorney's fees are not collectable. The notice sent by Washington did not contain such language. Therefore under this provision of state law, Washington is not entitled to recover attorney's fees. Washington argues that state law is not determinative in this case because § 506(b) preempts state law citing *In re Welzel*, 275 F.3d 1308 (11th Cir.2001) and *Unsecured Creditors' Committee*, 768 F.2d 580 (4th Cir.1985). Washington is incorrect. In *Unsecured Creditors'* the Court went through a detail explanation of the legislative history for § 506(b) and went on to hold that by rejecting the House version of § 506(b), Congress intended to abrogate the pre-existing requirement that attorney's fee agreements were enforceable only in accordance with state law. *Id.* By making this determination, the Court held that the creditor was entitled to enforcement of its attorney's fee agreement despite its failure to comply with the state's notice requirement.

[10] ■■■■ issue has been decided by the 11th Circuit in *In re Welzel* which decision is binding on this court. In *Welzel*, the Court stated that *§ 502* governed the allowance of claims and *only* after the

claim has been allowed under § 502 will § 506 come into consideration. *Welzel*, 275 F.3d at 1317–1318. Contrary to Washington's contentions, *Welzel* does not stand for the proposition that state law need not be complied with in order to recover attorney's fees under § 506. *Welzel* does state that after the bankruptcy court determines that the fees are allowable under § 502, then the court must *also* determine whether the creditor is oversecured and whether those fees are reasonable and therefore allowable as part of creditor's secured claim. *Welzel*, at 1318. ("Section 502 deals with the threshold question of whether a claim should be allowed or disallowed. Once the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured.")

■ Section 502(b)(1) disallows claims to the extent that such claim is unenforceable against the debtor and property of the debtor under applicable nonbankruptcy law.[3] The undisputed facts establish that Washington's notice did not provide the 10–day pay off period to avoid the attorney fees. "The entire claim to fees is allowable under § 502 *as long as the exceptions in subsection (b) do not apply.*" *Welzel*, at 1318 emphasis added. If the notice does not provide such language, then the attorney's fees are not enforceable under this Georgia Code provision. *General Elec. Credit Corp. v. Brooks*, 242 Ga. 109, 249 S.E.2d 596 (1978); *Turk's Memory Chapel,*

*Inc. v. Toccoa Casket Co.*, 134 Ga.App. 71, 213 S.E.2d 174 (1975). Section 506(b) does not provide authority for a creditor to impose an obligation on a debtor to pay, i.e. the creation of debt. It merely provides the basis for determining that a non-bankruptcy law created obligation, in this instance the obligation to pay attorney's fees, is allowable as part of a secured or unsecured claim in the bankruptcy case. Therefore, summary judgment is clearly not appropriate on this issue.[4]

Accordingly it is ORDERED that Plaintiff's Motion for Summary Judgment is DENIED. It is furthered ORDERED that Washington Mutual's Motion for Summary Judgment is hereby GRANTED IN PART and DENIED IN PART. As to Plaintiff's claim for violation of Rule 9016, Washington Mutual's motion for summary judgment is GRANTED. As to all remaining claims of Plaintiff, Washington Mutual's motion for summary judgment is DENIED.

---

**3.** 11 U.S.C. § 502(b)(1) provides:
(b) ...[T]he court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim..., except to the extent that...
(1) such claim is unenforceable against a debtor and property of the debtor, under any agreement or applicable law for reason other than because such claim is contingent or unmatured.

**4.** Whether there exists an alternative non-bankruptcy law authority to enforce the obligation to pay attorney's fees is not now before me.